FILED
CLERK
8/11/2015 1:53 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
WILLIAM BARTON,

                Plaintiff,

    -against-

ANTHONY J. ANNUCCI, individually,
BRIAN FISCHER, individually, ANDREA D.
EVANS, individually, TINA STANFORD,
individually, and L. MARTINIS [sic],
individually,

                Defendants.
----------------------------------------------------------X

**OPINION & ORDER**
**14-CV-4733 (SJF)(SIL)**

FEUERSTEIN, J.

I.    Introduction

On or about August 8, 2014, plaintiff William Barton ("plaintiff") commenced this civil rights action against defendants Anthony J. Annucci ("Annucci"), Acting Commissioner of the New York State Department of Corrections and Community Supervision ("NYDOCCS"); Brian Fischer ("Fischer"), former Commissioner of the New York State Department of Correctional Services ("NYDOC") and NYDOCCS; Andrea D. Evans ("Evans"), former Chairperson of the New York State Board of Parole ("NYBOP"); Tina Stanford ("Stanford"), Chairwoman of the NYBOP; and Lourdes Martinez ("Martinez"), i/s/a "L. Martinis," plaintiff's assigned parole officer (collectively, "defendants"), all in their individual capacity only, pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, violations of his right to be free from false arrest and his due process rights, respectively, under the Fourth and Fourteenth Amendments to the United States Constitution. Pending before the Court is defendants' motion to dismiss the complaint in its entirety pursuant to, *inter alia*, Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure

1

to state a claim for relief. For the reasons set forth below, defendants' motion is granted in part and denied in part.

II.  Background

   A.  Factual Background[1]

The Sentence and Commitment, dated June 28, 2001, of the County Court of the State of New York, County of Suffolk ("the state court") indicates, in relevant part, that upon plaintiff's conviction by plea of one (1) count of robbery in the first degree in violation of New York Penal Law § 160.15-04, plaintiff was sentenced, as a second felony offender, to a determinate term of imprisonment of ten (10) years, to be followed by a period of post-release supervision ("PRS") for five (5) years. (Affirmation of Richard de Simone ["Simone Aff."], Ex. A).[2] It is undisputed, however, that the sentencing judge did not pronounce a specified period of PRS at the time of plaintiff's sentencing in 2001, notwithstanding that the imposition of a term of PRS was

---

[1] As required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts are either taken from the allegations in the complaint and assumed to be true for purposes of this motion, or are of matters of which judicial notice may be taken. They do not constitute findings of fact by the Court.

[2] The Court may take judicial notice of the Sentence and Commitment. See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (holding that courts may "take judicial notice of relevant matters of public record."); Shmueli v. City of New York, 424 F.3d 231, 233 (2d Cir. 2005) ("The New York State [] prosecution of [the plaintiff] is a matter of public record, of which [the Court] [may] take judicial notice."); Ruffins v. Dep't of Corr. Servs. ("Ruffins II"), 907 F. Supp. 2d 290, 293 n. 4 (E.D.N.Y. 2012) (taking "judicial notice of the underlying state court sentence that was the basis of plaintiff's PRS [post-release supervision] term, as well as the administrative documentation of plaintiff's custody and release from DOCS.")

mandatory under New York Penal Law § 70.45.[3]

On April 29, 2008, the New York State Court of Appeals held, *inter alia*, that Sections 380.20 and 380.40 of the New York Criminal Procedure Law required that the PRS component of a defendant's sentence be pronounced by the sentencing judge in the defendant's presence at the time of sentencing.[4] See People v. Sparber, 10 N.Y.3d 457, 469-70, 859 N.Y.S.2d 582, 889 N.E.2d 459 (N.Y. 2008), superceded in part by N.Y. Penal Law § 70.85 and N.Y. Correct. Law § 601-d; Matter of Garner v. New York State Dep't of Corr. Servs., 10 N.Y.3d 358, 362, 859 N.Y.S.2d 590, 889 N.E.2d 467 (N.Y. 2008), superceded in part by N.Y. Penal Law § 70.85 and

---

[3] Although the state court did not orally pronounce a period of PRS to plaintiff's sentence at the time of sentencing, the addition of PRS by a clerk of the state court "was consistently upheld as valid by New York courts at that time[,]" Ruffins v. Dep't of Corr. Servs. ("Ruffins I"), 701 F. Supp. 2d 385, 402 (E.D.N.Y. 2010) (citing cases), i.e., in June 2001. Thus, "from the time that [N.Y. Penal Law § 70.45] was enacted [in 1998] to the time that the Second Circuit rendered its decision in Earley [v. Murray, 451 F.3d 71, 75 (2d Cir. 2006)] [in June 2006], it was not clearly established that [the administrative] addition of a term of PRS was in violation of [a prisoner's] constitutional rights, and it was objectively reasonable for [a state court clerk] to have administratively imposed the PRS term [in a Sentence and Commitment]." Id. at 404.

[4] Although on June 9, 2006, the United States Court of Appeals for the Second Circuit held that "[t]he only cognizable sentence is the one imposed by the judge," Earley, 451 F.3d at 75; that "[a]ny alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect[,]" id.; and that the administrative imposition of PRS violated a prisoner's constitutional rights, id., "state courts continued to disagree as to the precise application of Earley to Penal Law § 70.45," Ruffins II, 907 F. Supp. 2d at 297, and there was "critical ambiguity regarding the implications of the Earley decision," id.; see also Ruffins I, 701 F. Supp. at 404-06, until the New York State Court of Appeals finally ruled on the issue almost two (2) years later. Since "the Second Circuit's decision in Earley did not clearly establish, for the purposes of qualified immunity, that the administrative imposition of a period of PRS violated a constitutional right[,]" Ruffins I, 701 F. Supp. 2d at 404, for the period between the Second Circuit's decision in Earley and the New York State Court of Appeals decisions in Sparber and Garner, i.e. from June 9, 2006 until April 29, 2008, "it was objectively reasonable for all [NY]DOCS and NYS parole officials to believe that continued enforcement of an administratively imposed period of PRS (pending guidance of an appropriate remedy) was not in violation of a prisoner's constitutional rights." Id.

3

N.Y. Correct. Law § 601-d. Accordingly, in June 2008, Section 601-d of the New York Correction Law was enacted to "facilitate[] a review by the sentencing court of all cases in which the court did not specify a period of PRS in the commitment order" involving sentences imposing a determinate term of imprisonment following the enactment of N.Y. Penal Law § 70.45. Mark Bonacquist, Practice Commentaries, N.Y. Correct. Law § 601-d (McKinney 2015); see also Ruffins I, 701 F. Supp. 2d at 401-02 ("In response to the Garner and Sparber decisions, the New York legislature passed Correction Law § 601-d, which created a procedure by which improperly sentenced defendants could be identified and resentenced. That law became effective June 30, 2008.") As originally enacted,[5] N.Y. Correct. Law § 601-d provided, in relevant part, as follows:

> "This section shall apply only to inmates in the custody of the commissioner, and releasees under the supervision of the division of parole, upon whom a determinate sentence was imposed between September first, nineteen hundred ninety-eight, and the effective date of this section, which was required by law to include a term of post-release supervision:
>
> 1. For purposes of this section, such a person shall be deemed a "designated person" *if the commitment order that accompanied such person does not indicate imposition of any term of post-release supervision*; provided, however, that if such agency with custody of or supervision over such person has the sentencing minutes that show that a term of post-release supervision was actually pronounced at sentence, such person shall not be deemed a designated person.
>
> 2. Whenever it shall appear to the satisfaction of the department that an inmate in its custody, or to the satisfaction of the division of parole that a releasee under its supervision, is a designated person, such agency shall make notification of that fact to the court that sentenced such person, and to the inmate or releasee."

(emphasis added).

Since the state court's Sentence and Commitment indicated that plaintiff's sentence

---

[5] Section 601-d of the New York Correction Law was amended on March 31, 2011 to reflect the merger of the NYDOC and the New York State Division of Parole ("NYDOP") to become the NYDOCCS.

included a period of PRS for five (5) years, plaintiff was not deemed to be a "designated person" under N.Y. Correct. Law § 601-d.[6] It is undisputed that plaintiff was never resentenced by the state court and that after plaintiff completed the imprisonment component of his sentence "on or before 06-28-11," (Compl., ¶ 8), defendants imposed PRS conditions upon him in accordance with the state court's Sentence and Commitment. It is also undisputed that plaintiff was subsequently imprisoned for violating the conditions of his PRS.[7]

In or about November 2013, plaintiff commenced a proceeding against the NYDOP pursuant to Article 78 of the New York Civil Practice Law and Rules in the Supreme Court of the State of New York, County of Suffolk ("the Article 78 proceeding"), challenging the imposition of PRS to his sentence.[8] By order dated May 28, 2014, the Article 78 court, *inter alia*, granted plaintiff's petition, finding that the NYDOCCS was "proceeding without or in excess of its jurisdiction, by imposing a period of [PRS] upon [him][,]" in violation of N.Y. C.P.L.R. § 7803(2). Barton v. Division of Parole, State of N.Y., No. 27278-13 (N.Y. Sup. Ct. May 28, 2014). It is undisputed that plaintiff was released from prison the day after the NYDOCCS received a copy of the decision in the Article 78 proceeding.

---

[6] Plaintiff's conclusory assertion that "[d]efendants knew that no period of [PRS] had been announced by the sentencing court and that, therefore, any restriction on plaintiff's liberty which they caused or permitted to be imposed on him subsequent to that date was violative of his constitutional right to due process of law[,]" (Compl., ¶ 10), absent any factual allegations to support a basis for their purported knowledge, is not entitled to the assumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

[7] Judicial notice is taken of the fact that plaintiff was imprisoned by NYDOCCS from December 3, 2013 until June 20, 2014. See www.nysdoccslookup.doccs.ny.gov/.

[8] Plaintiff does not allege that he took any steps prior to commencing the Article 78 proceeding to notify defendants, or anyone else at NYDOCCS, that his pronounced sentence did not include a period of PRS or differed in any way from the state court's Sentence and Commitment.

B.    Procedural History

On or about August 8, 2014, plaintiff commenced this civil rights action against defendants pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that defendants' imposition of PRS following his release from incarceration, and subsequent arrest for violating the conditions of the PRS, violated his right to be free from false arrest and his due process rights under the Fourth and Fourteenth Amendments to the United States Constitution, respectively.

Defendants now move to dismiss the complaint in its entirety pursuant to, *inter alia*, Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

III.   Discussion

A.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]'

6

devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.; see also Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether

7

they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014), cert. denied, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014).

### B. Claims against Annucci, Fischer, Evans and Stanford

#### 1. Qualified Immunity

"Qualified immunity protects federal and state officials from both civil damages and 'unnecessary and burdensome discovery or trial proceedings[,]'" Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 134 (2d Cir. 2013) (quoting Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)); accord Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012), "where the officials' conduct was not in violation of a 'clearly established' constitutional right." Sudler v. City of New York, 689 F.3d 159, 174 (2d Cir. 2012); see also Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) ("A federal official is entitled to qualified immunity from suit for money damages unless the plaintiff shows that the official violated a statutory or constitutional right, and that the right was 'clearly established' at the time of the challenged conduct.") "It is an affirmative defense that the defendants have the burden of

8

raising in their answer and establishing at trial or on a motion for summary judgment." Spavone, 719 F.3d at 134 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("Qualified immunity is an affirmative defense, on which the defendant officials bear the burden of proof.")

"Qualified immunity * * * extends to circumstances where an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' and applies 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Spavone, 719 F.3d at 135 (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)); see also Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013), cert. denied, 135 S. Ct. 948, 190 L. Ed. 2d 830 (2015) ("Qualified immunity, an affirmative defense on which the defendant officials bear the burden of proof, * * * protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 793 (2d Cir. 2002) ("Individual public officials are entitled to qualified immunity from claims for monetary damages if the statutory right infringed was not clearly established at the time of the violation or if it was objectively reasonable for officials to believe their acts did not infringe upon those rights.")

"So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." Spavone, 719 F.3d at 135 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("If the conduct did not violate a clearly established right, or if it was objectively reasonable for the official to believe that his conduct did not violate such a right,

then the official is protected by qualified immunity." (quotations, brackets and citation omitted)). "In assessing objective reasonableness, [courts] look to whether officers of reasonable competence could disagree on the legality of the defendant's actions[,]" McGarry v. Pallito, 687 F.3d 505, 512 (2d Cir. 2012) (quotations and citation omitted); see also Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010), in light of the "particular factual context" he confronted. Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013).

"[Q]ualified immunity provides a broad shield[] * * * to ensure 'that those who serve the government do so with the decisiveness and the judgment required by the public good.'" Zalaski, 723 F.3d at 389 (quoting Filarsky v. Delia, — U.S. —, 132 S. Ct. 1657, 1665, 182 L. Ed. 2d 662 (2012)). "Toward that end, it affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability." Id. (quoting Messerschmidt v. Millender, — U.S. —, 132 S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012)). "Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Vincent, 718 F.3d at 166 (emphasis omitted) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)); see also Sudler, 689 F.3d at 174 ("Qualified immunity * * * shields government officials from liability when they make reasonable mistakes about the legality of their actions * * *." (quotations and citation omitted)).

"Because the immunity not only protects against a judgment for damages but also is in part an entitlement not to be forced to litigate, * * * early resolution of the qualified immunity defense is encouraged * * *." Vincent, 718 F.3d at 166-67 (quotations and citations omitted); see also Walker, 717 F.3d at 126 ("[C]ourts should resolve the question of qualified immunity at the

10

'earliest possible stage in litigation[.]" (quotations and citation omitted)). However, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route[.]" Walker, 717 F.3d at 126 (quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)). "[O]n a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.'" McGarry, 687 F.3d at 514 (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)).

Although, generally, a qualified immunity defense should be denied at the pleadings stage where "[i]t is unclear what information the individual defendants possessed when they allegedly deprived plaintiff[] of [his] rights under the [Constitution], or whether other facts may come to light that would render their actions objectively reasonable[,]" Taylor, 313 F.3d at 794, it is clear what information Annucci, Fischer, Evans and Stanford (collectively, "the NYDOCCS defendants") possessed when they allegedly violated plaintiff's constitutional rights on or after June 28, 2011 by imposing PRS condition on plaintiff upon his release from incarceration and causing his arrest upon his violation of those PRS conditions. Specifically, the NYDOCCS defendants were confronted with the state court's Sentence and Commitment indicating, in relevant part, that plaintiff was sentenced, as a second felony offender, to a determinate term of imprisonment of ten (10) years, to be followed by a period of post-release supervision ("PRS") for five (5) years. (Simone Aff., Ex. A). Under New York law, NYDOCCS is "conclusively bound" by the contents of the Sentence and Commitment, Matter of Murray v. Goord, 1 N.Y.3d 29, 32, 769 N.Y.S.2d 165, 801 N.E.2d 385 (N.Y. 2003); see also Garner, 10 N.Y.3d at 362, 859

11

N.Y.S.2d 590; Miller v. State, 124 A.D.3d 997, 999, 4 N.Y.S.2d 143 (N.Y. App. Div. 2015); Flournoy v. Supreme Court Clerk, 122 A.D.3d 734, 735, 996 N.Y.S.2d 640 (N.Y. App. Div. 2014), lv. denied, 24 N.Y.3d 917, 4 N.Y.S.2d 603, 28 N.E.3d 39 (N.Y. 2015), and plaintiff does not allege any facts supporting a reasonable inference, *inter alia*, that the NYDOCCS defendants were ever aware of his pronounced sentence or that his pronounced sentence was different than the Sentence and Commitment, or otherwise knew that plaintiff should have been resentenced or released prior to receiving the decision in the Article 78 proceeding. Accordingly, it was objectively reasonable for the NYDOCCS defendants to believe that their actions in imposing a period of PRS upon plaintiff following his release from prison in accordance with the state court's Sentence and Commitment, and in causing plaintiff's arrest for violations of the PRS conditions imposed upon him, were lawful and, thus, they are entitled to qualified immunity from plaintiff's claims as a matter of law. Therefore, the branch of defendants' motion seeking dismissal of plaintiff's claims against the NYDOCCS defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as barred by the doctrine of qualified immunity is granted and plaintiff's claims against the NYDOCCS defendants are dismissed in their entirety with prejudice as barred by the doctrine of qualified immunity.

    2.  Failure to State a Claim

 In any event, the complaint fails to state a plausible Section 1983 claim against the NYDOCCS defendants. A Section 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. See Raspardo v. Carlone, 770

F.3d 97, 115, 116 (2d Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant. * * * § 1983 requires individual, personalized liability on the part of each government defendant."); Spavone, 719 F.3d at 135 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotations and citation omitted)). "Personal involvement" may be established by evidence of direct participation in the challenged conduct, i.e., that the supervisory official "commit[ted] the acts personally" or "authorize[d], order[ed], or help[ed] others to do the unlawful acts," Terebesi v. Torreso, 764 F.3d 217, 234 (2d Cir. 2014), cert. denied, 135 S. Ct. 1842, 191 L. Ed. 2d 723 (2015), or by evidence of the supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003); see also Grullon, 720 F.3d at 139. "In addition to satisfying one of th[o]se requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." Raspardo, 770 F.3d at 116. "The fact that [a defendant] was in a high position of authority is an insufficient basis for the imposition of personal liability." Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); see also Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). A complaint based upon a violation under Section 1983 that does not allege facts establishing the

personal involvement of an individual defendant fails as a matter of law. See Costello v. City of Burlington, 632 F.3d 41, 48-9 (2d Cir. 2011).

Plaintiff has not alleged the direct participation of any of the NYDOCCS defendants in the alleged violations of his constitutional rights, nor any basis upon which to find them liable in a supervisory capacity. In fact, the only allegation against Fischer in the complaint is that he was the Commissioner of the NYDOC and NYDOCCS during part of the period in which the PRS was imposed upon plaintiff, (Compl., ¶ 4), and that he "required plaintiff to sign a document and caused it to be explained to him that he would be released only if he signed a document which purported to empower the Board or [sic] Parole to restrict [his] freedom," (Compl., ¶ 12), which does not rise to the level of a constitutional violation. Moreover, even accepting that allegation as true, there are no allegations in the complaint from which it may reasonably be inferred that the constitutional violations alleged, i.e., the imposition of the PRS to plaintiff's sentence and his subsequent arrest for violating the conditions of his PRS, were proximately caused by Fischer's purported conduct in causing plaintiff to sign a document prior to his release from incarceration, particularly since the state court's Sentence and Commitment, by which the NYDOCCS defendants were conclusively bound, included the term of PRS imposed upon plaintiff as a component of plaintiff's sentence.

The other three (3) NYDOCCS defendants are named as defendants in the caption of the complaint, but are not mentioned anywhere in the body of the complaint, except that Annucci is alleged to be the Commissioner of the NYDOCCS and Evans is alleged to be the Chairperson of the NYBOP during part of the period in which the PRS was imposed upon plaintiff. (Compl., ¶¶

4, 6). Those allegations are insufficient to impose liability under Section 1983 as a matter of law. See Back, 365 F.3d at 127; Al-Jundi, 885 F.2d at 1065. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 claims against the NYDOCCS defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief is granted and plaintiff's Section 1983 claims against the NYDOCCS defendants are dismissed in their entirety with prejudice for failure to state a claim for relief.

      C.      Claims against Martinez

Plaintiff alleges that Martinez was his assigned parole officer during part of the period in which the PRS was imposed, (Compl., ¶ 7), and rendered his PRS "more onerous than otherwise would have been," (id., ¶ 14), by "preventing him from completing a program and penalizing him for his alleged failure to complete the program, causing his ouster from his apartment by providing false information and thereby causing his landlord to conclude he had been using and selling drugs and insisting he participate in a prolonged in-patient program based on a frivolous allegation of heroin use[,]" (id., ¶ 1).[9] Assuming the truth of those allegations, as required on a motion to dismiss at the pleading stage, the complaint arguably states a plausible Section 1983 claim against Martinez for violations of his Fourteenth Amendment due process rights. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims against

---

[9] Defendants entirely ignore the allegations of specific acts committed by Martinez in the first paragraph of plaintiff's complaint in arguing that the complaint should be dismissed because it "falls far short of the minimum pleading standard necessary under Twobley [sic] and Iqbal * * *." (Def. Mem. at 11).

15

Martinez is denied.

IV. CONCLUSION

For the foregoing reasons, the branches of defendants' motion seeking dismissal of plaintiff's claims against the NYDOCCS defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted; plaintiff's claims against the NYDOCCS defendants are dismissed in their entirety with prejudice for failure to state a claim for relief; and defendants' motion is otherwise denied. There being no just reason for delay, the Clerk of the Court shall enter judgment in favor of the NYDOCCS defendants pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

SO ORDERED.

/s/
Sandra J. Feuerstein
United States District Judge

Dated: August 11, 2015
       Central Islip, New York